1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

DAMAN LEE MICHAEL WANDKE,

9

Plaintiff,

10

v.

11

NATIONAL RAILROAD PASSENGER
CORPORATION,

12

Defendant.

13

Case No. C22-396-MLP

ORDER

14
15
16
17
18
19
20

This matter is before the Court on Defendant National Railroad Passenger Corporation's

("Amtrak") Motion for Judgment on the Pleadings ("Defendant's Motion"). (Def.'s Mot. (dkt.

# 20).) Plaintiff Daman Lee Michael Wandke filed an opposition (Pl.'s Resp. (dkt. # 22)), and

Amtrak filed a reply (Def.'s Reply (dkt. # 24)). Having considered the parties' submissions, the

governing law, and the balance of the record, the Court GRANTS in part and DENIES in part

Defendant's Motion.

## I.     BACKGROUND

21
22
23

Mr. Wandke alleges that, in December 2019, he reserved an Amtrak trip for Saturday,

December 21, 2019, from Bellingham, Washington, to Tacoma, Washington, informing Amtrak

that he would be using a power chair for mobility. (Compl. (dkt. # 1) at ¶¶ 19-20.) The day

before the trip, Mr. Wandke spoke to an Amtrak agent who informed him that, due to mudslides in Tacoma, the train would run from Bellingham to Seattle and a bus would take him from Seattle, Washington, to Tacoma. (*Id.* at ¶¶ 21-22.) The Amtrak agent assured him that, because his reservation included the power chair, accessible transportation from Seattle to Tacoma "had already been arranged" by Amtrak. (*Id.* at ¶ 23.)

On the day of the trip, before Mr. Wandke boarded the train, an Amtrak agent at the Bellingham station "assured Mr. Wandke there would be an accessible bus in Seattle when Mr. Wandke arrived." (Compl. at ¶ 24.) However, in transit to Seattle, an Amtrak representative informed Mr. Wandke that Amtrak "did not have an accessible bus prepared" but "had arranged for an accessible taxi to take him" to Tacoma. (*Id.* at ¶ 25.)

Mr. Wandke got off the train in Seattle and "waited 20 minutes for his checked luggage in inclement weather." (Compl. at ¶ 26.) Then, an Amtrak representative said they "would call" for an accessible taxi as it "had not previously been arranged." (*Id.* at ¶ 27.) Another power chair user was also waiting for an accessible taxi that Amtrak had told her would take her to her destination, Olympia, Washington. (*Id.*) The Amtrak representative told Mr. Wandke, and the other power chair user, that Amtrak would call one accessible taxi to transport both of them. (*Id.* at ¶ 28.) Mr. Wandke told the Amtrak representative that it was not safe to fit two wheelchairs in one taxi. (*Id.* at ¶ 29.) According to Mr. Wandke, although one passenger could be transferred to a taxi seat and the wheelchair dismantled, remaining in "carefully designed" wheelchairs "allow[s] disabled people to stay in the position that is best for their body and posture." (*Id.* at ¶ 30.)

Twenty minutes after receiving his luggage and having this exchange with Amtrak representatives—*i.e.*, forty minutes after arriving in Seattle—all ambulatory passengers had left

on an Amtrak-provided bus. (Compl. at ¶ 32.) However, the Amtrak representative informed Mr. Wandke and the other power chair user that "it would be at least another [forty] minutes" before the accessible taxi arrived. (*Id.* at ¶ 31.) Because the other power chair said she had no option other than waiting for Amtrak to provide transportation, Mr. Wandke made other arrangements. (*Id.* at ¶¶ 33-34.) Mr. Wandke alleges that, with difficulty and some assistance by an Amtrak representative, he then strapped his luggage to his wheelchair and took light rail to a ferry to Bainbridge Island, where his mother picked him up. (*Id.* at ¶¶ 34-35.) He missed the Tacoma event for which he purchased his Amtrak trip. (*Id.* at ¶ 35.)

Mr. Wandke asserts claims under: (1) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (2) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and (3) the Washington Law Against Discrimination, RCW §§ 49.60.010, *et seq.* (Compl. at ¶¶ 40-86.) He seeks an injunction requiring Amtrak to comply with these laws, equitable relief, compensatory and statutory damages, and attorney's fees and expenses. (*Id.* at 14-15, ¶¶ 1-6.) In the instant motion, Amtrak seeks dismissal of all of Mr. Wandke's claims. (Def.'s Mot.)

## II.    DISCUSSION

### A.    Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. *See* Fed. R. Civ. P. 12(c). A court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted); *see also Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 (9th Cir. 2011) (explaining that the court "assume[s] the facts alleged in the complaint are true . . .").

When a Rule 12(c) motion is used as a vehicle for a Rule 12(b)(6) motion after an answer has been filed, or when it is functionally equivalent to a motion to dismiss for failure to state a claim, the same standard applies to both. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation marks and citation omitted). Dismissal for failure to state a claim "is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

### B.      Washington Law Against Discrimination Claim

Amtrak contends claims under the Washington Law Against Discrimination are preempted by the Amtrak Act. (Def.'s Mot. at 7 (citing 49 U.S.C. § 24301(g)).) Mr. Wandke concedes preemption applies. (Pl.'s Resp. at 13.) Accordingly, the Court concludes this claim should be dismissed.

### C.      ADA and Rehabilitation Act Claims

The ADA and the Rehabilitation Act prohibit Amtrak, as a federally-funded public entity, "from discriminating on the basis of disability." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021). To establish a *prima facie* case of discrimination under either law, Mr. Wandke "must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion,

denial of benefits, or discrimination was by reason of his disability." *Id.* at 737-38 (internal quotation marks and citation omitted). "A disability discrimination claim may be based on . . . failure to make a reasonable accommodation." *Id.* at 738 (internal quotation marks and citation omitted).

Amtrak challenges only the second element, arguing Mr. Wandke "has not pled facts to show he was excluded from participation in or denied the benefits of Amtrak's services." (Def.'s Mot. at 5.) Mr. Wandke contends his allegations that Amtrak failed to provide him safe, timely transportation from Seattle to Tacoma suffice. (Pl.'s Resp. at 8.)

First, Amtrak contends it offered a reasonable accommodation under emergency circumstances. (Def.'s Mot. at 5-6 (citing *Foley v. City of Lafayette, Ind.*, 359 F.3d 925 (7th Cir. 2004)).) In *Foley*, a plaintiff wheelchair user arrived by train to a station where frigid temperatures rendered both elevators from the platform inoperable and heavy snowfall had covered the ramp from the platform. 359 F.3d at 926-28. The plaintiff "decided his best option was to slowly walk up the stairs. [An] employee . . . assisted [him] by walking alongside and supporting some of [his] weight." *Id.* at 928. The Seventh Circuit affirmed the district court's grant of summary judgment for the defendant, holding that "[i]n such unusual circumstances—heavy snowfall, inoperative elevators, and frigid temperatures—[the employee's] actions constituted a reasonable emergency accommodation." *Id.* at 930. The Seventh Circuit found that although plaintiff identified actions that employees could have taken earlier to fix the elevators or clear snow from the ramp, at most these allegations showed "isolated instances of employee

negligence and not a systemic problem," and thus, "did not constitute a violation of the ADA."[1]
*Id.*

Mr. Wandke contends *Foley* is inapposite because, in *Foley*, the defendant's employees promptly and effectively remediated the lack of access, helping the plaintiff up the stairs to a vehicle. (Pl.'s Resp. at 12.) Here, according to Mr. Wandke's allegations, Amtrak's emergency accommodation was neither prompt nor effective. Mr. Wandke had already waited forty minutes in the rain when he was told it would be at least another forty minutes. (Compl. at ¶¶ 26, 31, 34.) Although Amtrak argues he could have waited longer, the allegations are that Amtrak failed to transport Mr. Wandke to Tacoma via bus, as it had promised it would do and as it succeeded in doing for ambulatory passengers. (*Id.* at ¶¶ 32, 49.)

Furthermore, in *Foley*, the emergency situation was caused by the weather. Here, while the initial disruption to train service was caused by mudslides, there is no indication that the mudslides had any impact on the accessible bus that Mr. Wandke alleges Amtrak promised would be waiting for him at the Seattle station. Amtrak asserts in passing that "no accessible bus was available," but otherwise provides no explanation. (Def.'s Reply at 3.) Amtrak provided a bus for ambulatory passengers. (Compl. at ¶ 32.) There is no indication, at this early stage of the case, that providing an accessible bus was outside Amtrak's control, unlike the inoperable elevators and snow-covered ramp in *Foley*. Because the weather emergency does not appear to

---

[1] The Ninth Circuit has expressed reservations about the Seventh Circuit's holding that a plaintiff must show "more than an 'isolated instance[ ] of employee negligence[.]'" *Cohen v. City of Culver City*, 754 F.3d 690, 700 (9th Cir. 2014) (quoting *Foley*, 359 F.3d at 930); *but see Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850 (9th Cir. 2001) (Regulations establish that "isolated or temporary problems caused by lift malfunctions are not violations of the ADA."). The issue need not be resolved in this case because, unlike in *Foley*, Amtrak has not argued that weather conditions outside of its control were responsible for its failure to provide accessible transportation.

be responsible for the lack of an accessible bus, the Court cannot conclude, as a matter of law, that Amtrak provided a reasonable emergency accommodation.

Next, Amtrak argues any failures on its part constituted only minor errors in executing a reasonable plan, citing the Fourth Circuit's unpublished opinion in *Shirey ex rel. Kyger v. City of Alexandria Sch. Bd.*, 229 F.3d 1143 (4th Cir. 2000) (per curiam). (Def.'s Mot. at 6-7.) *Shirey* involved two different school evacuations where ADA violations were alleged. *Shirey*, 229 F.3d at *1. The plaintiff was a schoolchild with a disability who required a full-time aide. *Id.* During the first evacuation, the plaintiff, "along with a responsible adult and another disabled child, was left in the otherwise evacuated building for approximately seventy minutes." *Id.* The Fourth Circuit held that an ADA violation had occurred because "the undisputed facts demonstrate that [the plaintiff] was excluded from safe evacuation procedures." *Id.* at *5. "At that time, the School Board had no reasonable plan in place to evacuate disabled children from school buildings during an emergency." *Id.*

After the plaintiff's parents complained to the school board that this incident constituted disability discrimination, the parents and the school board reached an agreement to implement an emergency preparedness plan. *Shirey*, 229 F.3d at *1. During a second evacuation, the plan was largely but not flawlessly followed and, as a result, the plaintiff "was left alone for approximately two minutes." *Id.* at *2. The Fourth Circuit held that no ADA violation had occurred during the second evacuation because, "based on the undisputed facts, [the plaintiff] was not excluded from safe evacuation procedures." *Id.* at *5. Regarding the two minutes the plaintiff was left alone, the court held that "imperfect execution of an otherwise reasonable evacuation plan [does not constitute] disability discrimination. Minor errors in carrying out the evacuation plan are not a sufficient basis for a discrimination claim." *Id.* at *5 n.2.

Amtrak contends the instant case more closely resembles the second evacuation in *Shirey*, because "any delay that was caused by the [accessible] taxi not being at the station at the same time as the bus was available for non-disabled passengers is a mere 'minor error' in the overall accommodation[.]" (Def.'s Mot. at 6-7.) Mr. Wandke, in contrast, contends "Amtrak's transportation plan was unsafe in and of itself." (Pl.'s Resp. at 10.)

According to the allegations in the Complaint, Amtrak's plan was to have a pre-arranged accessible bus, capable of safely transporting all passengers in wheelchairs, ready at the station when Mr. Wandke arrived. (Compl. at ¶¶ 22-24.) Instead, the Complaint alleges, an accessible taxi capable of safely transporting one person in a wheelchair was forecast to arrive at the station at least an hour and twenty minutes after Mr. Wandke arrived. (*Id.* at ¶¶ 28-31.) The Court concludes that Mr. Wandke's allegations reflect more than a minor error in execution of Amtrak's plan. According to the allegations, Amtrak failed to follow major portions of the plan, such as pre-arranging a bus and having it ready when the train arrived. Unlike in *Shirey*, where flawed implementation of the plan left the plaintiff alone for two minutes, here Mr. Wandke alleges he was left without transportation for an extended period of time.

Amtrak argues a taxi may have been adequate because Mr. Wandke has not alleged that he was incapable of transferring to a taxi seat so his wheelchair could be collapsed. (Def.'s Mot. at 6.) But Mr. Wandke alleges this would be "unsafe."[2] (Compl. at ¶¶ 29, 34.) He further supports this allegation by stating, based on his familiarity with power wheelchairs and accessible vehicles, that accessible taxis "are equipped to secure the wheelchair," thus allowing "disabled people to stay in the position that is best for their body and posture" by remaining in

---

[2] Amtrak argues Mr. Wandke's Complaint focused on timeliness, while his brief attempts to shift the focus to safety. (Def.'s Reply at 2-3.) But the Complaint clearly raises safety issues with an accessible taxi. (*See* Compl. at ¶¶ 29, 34.)

the wheelchair. (*Id.* at ¶ 30.) At this stage, the Court must accept Mr. Wandke's safety related allegations as true.

Amtrak further argues that Mr. Wandke has failed to allege what type of vehicle actually arrived at the station, which "may have been a van that could have accommodated both passengers securely in their power chairs." (Def.'s Mot. at 6.) Amtrak offers no authority for the suggestion that the Court should speculate as to facts not alleged in the Complaint, particularly to speculate in Amtrak's favor.

Accepting all factual allegations in the Complaint as true, and construing them in the light most favorable to Mr. Wandke, he has sufficiently alleged that he was excluded from participation in or denied the benefits of Amtrak's services. Accordingly, the Court concludes Defendant's Motion should be denied with regard to the ADA and Rehabilitation Act claims.

## III.    CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's Motion (dkt. # 20). Mr. Wandke's claim under the Washington Law Against Discrimination is hereby dismissed.

Dated this 14th day of October, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 9